IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JERALD D. CRAWFORD, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SPRINT NEXTEL CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. <br> 08-AR-0443-S |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Sprint Nextel Corp. ("Sprint"), to dismiss the above-entitled putative class action filed by plaintiff, Jerald D. Crawford ("Crawford"), for failure to state a claim upon which relief can be granted. Sprint invokes Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Sprint's motion will be granted.

*Factual Allegations*

Sprint provided cellular telephone service to Crawford. In or around October 2006, Crawford began receiving text messages from Sprint on his cell phone advertising a service called "Sprint Picture Mail." Picture Mail enables users to transmit digital photographs via their cell phones. The advertisements read as follows: "Service Fee to gain access, add Sprint Picture Mail to your Sprint Service Plan. A $5.00/mo. Service charge (plus taxes

1

**and fees**) will be added to your Sprint Invoice." (emphasis added). In response to these text message advertisements, Crawford added Picture Mail to his Sprint plan. During the first thirty days of the service, Crawford transmitted numerous pictures through his cell phone. At the end of the billing cycle, Crawford was charged $69.72 as a usage fee for the Picture Mail service, based on a rate of $0.03 per kilobyte (KB) of data transmitted. In his complaint, Crawford alleges that he and customers like him are not informed of the full costs of the Picture Mail service until the end of the billing cycle. He claims that Sprint fraudulently induced him into purchasing the service based on the low cost mentioned in the text message advertisements. After receiving his bill, Crawford complained to Sprint that he was never made aware of the usage fee, but Sprint told Crawford that the bill must be paid.

Crawford argues that Sprint's text message advertisements constitute mail fraud and wire fraud, forming the basis of a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Specifically, Crawford attempts to state a cause of action pursuant to 18 U.S.C. § 1962(a), which provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Sprint tellingly argues that Crawford's complaint fails to state a claim because: 1) Crawford does not allege facts to demonstrate that Sprint had any duty to disclose the specific rate at which **fees** would be charged, 2) Crawford does not allege facts to demonstrate that a reasonably prudent person viewing the text message advertisements would have believed that there would be no **fees** beyond the $5 per month service charge, and 3) Crawford does not allege that he was injured by Sprint's use or investment of income derived from the alleged racketeering activity.

*Standard of Review*

In order to survive a 12(b)(6) motion, a plaintiff must allege "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965 (2007).  He must allege "enough facts to state a claim to relief that is plausible on its face," and the facts "must be enough to raise a right to relief above the speculative level." *Id.* at 1965, 1974.  In considering a 12(b)(6) motion, the court "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (quotations and citation omitted).

*Analysis*

It is undisputed that Sprint's text message advertisements did not contain any affirmative misrepresentations.  However, Crawford

contends that Sprint's failure to disclose the specific rate of the additional fees that would be charged for the Picture Mail Service amounts to a fraudulent omission.  Sprint argues, on the other hand, that it did not have a duty to disclose the specific rate of the additional charges in the text message advertisements.

A plaintiff alleging that a defendant engaged in a pattern of racketeering activity through the predicate acts of mail and wire fraud must prove that the defendant devised a scheme to defraud through some type of deceptive conduct. *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 520-21 (11th Cir. 2000). "Nondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose, either by statute or otherwise." *McCullough v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002).  A plaintiff whose RICO claim is based on fraudulent nondisclosure must allege that the defendant had a duty to disclose the facts allegedly withheld and allege facts to support this conclusion. *See Amer. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007); *see also Kemp v. Amer. Tel. & Tel. Co.*, 393 F.3d 1354, 1359-60 (11th Cir. 2004) ("The nondisclosure of material information, even in the absence of any patently false statements, can [] constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose.").  A duty to disclose can arise contractually or through positive law. *See Langford v. Rite Aid*, 231 F.3d 1308, 1312 (11th

Cir. 2000). A duty can also be found through an examination of the relationship between the parties. *Id.* "Determinations as to whether a duty to disclose exists must be made on a case by case basis, with appropriate attention given to the nature of the transaction and the relationship between the parties." *Id.* at 1313.

Crawford's complaint does not allege, even by way of conclusion, that Sprint had a duty to disclose the precise amount of the additional fees that would be charged for the Picture Mail service. In his response to Sprint's motion to dismiss, Crawford, citing to *Kemp*, argues, without amending his complaint, that Sprint had a duty to disclose the $0.03 per KB data fee.[1] In *Kemp*, a plaintiff whose grandson had used her telephone to call a 900-number gambling service sued AT&T under RICO for including on her phone bill charges for the ability to gamble as if they were long-distance charges. In affirming the district court's denial of AT&T's motion for judgment as a matter of law, the Eleventh Circuit

---

[1] In an apparent attempt to establish some legal basis for a duty to disclose in this case, Crawford cites to a joint policy statement from the Federal Communications Commission and the Federal Trade Commission relating to the advertising of long-distance and dial-around services. *See In re FCC/FTC Joint Policy Statement Policy Statement For the Advertising and Other Long-Distance Services to Consumers*, 15 F.C.C.R. 8654, 2000 WL 232230 (F.C.C. Mar. 1, 2000). However, Crawford fails to make any argument or to cite any authority in support of the proposition that a joint policy statement from federal regulatory bodies can give rise to a duty to disclose the breach of which would constitute mail or wire fraud, forming the basis of a civil RICO action. *See generally Ayres,* 234 F.3d at 521-25 (setting forth analysis of whether a particular federal statute creates "the kind of duty, a breach of which would create criminal liability or civil liability under RICO statutes"). In any event, the joint policy statement to which Crawford cites does not have any relevance to Sprint's Picture Mail service because it relates exclusively to advertisements for long-distance telephone service rather than picture transmission via cell phones.

held that "once AT&T included the [gambling] charges in the section of the bill for long distance calls, it had a duty to correct the mistaken impression it had fostered that the [gambling] debts were for long distance charges." 393 F.3d at 1360.  The *Kemp* court went on to note:

> It was clearly foreseeable that this formatting would cause some customers to think that the [gambling] charges were for a long distance phone call owed to AT&T and that the charges had to be paid in order to maintain phone service....In light of the circumstances here, and most specifically the way the charges were placed on the bill, we are satisfied that sufficient evidence supports the jury's conclusion that AT&T intended to mislead customers into believing that they had to pay the [gambling] debts in order to maintain uninterrupted phone service. As a result, AT&T had a duty to place adequate information on its bill that would have disclosed the true nature of the [gambling] charges and corrected the misconception it had intentionally created.

*Id.* (footnotes omitted).

The facts in this case are readily distinguishable from those in *Kemp*.  First, as compared to an advertisement, there is a much higher level of detail expected in a bill.  Additionally, the text message advertisements sent by Sprint could not reasonably be seen to create a mistaken impression giving rise to a duty to disclose because they expressly disclose that "taxes **and fees**" will be charged for the Picture Mail service. (emphasis added).  Hiding fees for gambling debts in a phone bill is categorically different from an advertisement that merely fails to specify the exact terms of an offer but that fully apprises the customer that he will be

charged fees.

Furthermore, there is no generalized duty to disclose information in the context of an arm's length commercial transaction. *See United States v. Brown*, 79 F.3d 1550, 1557-58 (11th Cir. 1996) (finding that housing developers had no duty to disclose the sales price disparity between their houses and their competitors houses to potential buyers); *see also Langford*, 231 F.3d at 1314 (finding that pharmacy chain had no duty to disclose to plaintiff uninsured customers that it charged them more for their prescriptions than it did insured customers).  It is undisputed that the transaction by which Crawford added Picture Mail to his Sprint plan was an average, run-of-the-mill arm's length commercial transaction.  In that context, to find that the mere failure to detail all the terms of an offer in an advertisement amounts to such a "scheme to defraud" that it forms the basis of a "pattern of racketeering activity" would constitute a fundamental alteration in the way modern advertising operates. In *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 70 (1st Cir. 1998), a case presenting a RICO class action against car dealers, the First Circuit made the following observation, which applies with equal force in this case:

> It would be a truly revolutionary change to make a criminal out of every salesman (assuming use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who-a jury might find-harbored in his heart the hope that the buyer

>would never ask.  Whether or not this would bring
>business in the United States to a standstill might be
>debated; but it is a change, if it is ever to be made,
>that should be undertaken by legislatures and not by
>courts.

The court can understand the surprise that Crawford may have felt when he opened his cell phone bill and found that he had been charged $69.72 in usage fees for a service that he says he thought would only cost $5 a month.  However, Crawford's displeasure and surprise does not add up to a violation of RICO because he has not alleged any facts that would suggest that Sprint had a duty to disclose the $0.03 per KB data fee in its advertisements for the Picture Mail service.  *See Landford*, 231 F.3d at 1314-15 (affirming district court's dismissal of civil RICO class action pursuant to Rule 12(b)(6) because plaintiff had failed to allege facts suggesting that defendant had a duty to disclose).  Vague advertisements are not the stuff of which RICO violations are made.  Put differently, Crawford has failed to allege "enough facts to state a claim to relief that is plausible on its face."  *See Twombly*, 127 S. Ct. at 1965.

Consistent with the foregoing, the court also finds dispositive Sprint's contention that as a matter of law its specific references to "fees" prevented Crawford from being able reasonably to conclude that he only had to pay $5.00 per month.  In other words, Crawford had more of a duty to inquire about the "fees" than Sprint had to describe them.  Crawford was given enough

information to alert him of the need to make an inquiry.

Sprint also argues that the action should be dismissed because Crawford's complaint fails to allege any injury resulting from Sprint's use or investment of income derived from alleged racketeering activity. Instead, Crawford alleges injury from the predicate acts of mail and wire fraud. Crawford concedes that he has not alleged any injury caused by the use or investment of racketeering income, but argues that the statute does not require such an allegation.

Sprint correctly notes that courts have consistently held that 18 U.S.C. § 1962(a) provides a civil remedy for persons injured by the use or investment of racketeering income but does not provide a remedy for persons injured only by the racketeering activity itself. Although the Eleventh Circuit has not addressed this issue, nine of the ten circuit courts that have dealt with it have held that a plaintiff wishing to state a cause of action under § 1962(a) must plead an injury from the use or investment of racketeering income, rather than from RICO predicate acts themselves. *See, e.g.*, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008); *Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 929 (5th Cir. 2002); *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 895 (8th Cir. 1999); *Reassurance D'Ile de France v. New Eng. Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir. 1994);

*Glessner v. Kenny*, 952 F.2d 702, 708-10 (3d Cir. 1991); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229-30 (D.C. Cir. 1991); *Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir. 1990); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149-51 (10th Cir. 1989). *But see Busby v. Crown Supply, Co.*, 896 F.2d 833, 836-38 (4th Cir. 1990).

In order for a plaintiff to bring a RICO action, he must allege an injury "by reason of a violation of section 1962." *See* 18 U.S.C. § 1964(c). Crawford only invokes § 1962(a), which makes it unlawful "**to use or invest**" income derived from racketeering activity to operate an enterprise that affects interstate commerce. (emphasis added). Reading § 1962(a) as encompassing harm that is caused by the racketeering activity itself but not caused by the use or investment of the racketeering income would be inconsistent with the plain language of the statute. *See Lockheed Martin Corp. v. Boeing Corp.*, 357 F. Supp. 2d 1350, 1370 (M.D. Fla. 2005) ("[W]hile it is accurate to say that an injury caused by the investment of racketeering income is clearly an injury 'by reason of' a § 1962(a) violation, the same may not be said of injuries caused by acts of racketeering."). Therefore, the court adopts the majority interpretation and finds that a plaintiff bringing a claim under § 1962(a) must allege an injury caused by the use or investment of income derived from racketeering activity. Crawford's failure to make such an allegation provides an

additional justification for the dismissal of this action.[2]

## Conclusion

For the above-mentioned reasons, Sprint's 12(b)(6) motion will be granted by separate order.

DONE this 14th day of July, 2008.

```
                            _____
                            WILLIAM M. ACKER, JR.
                            UNITED STATES DISTRICT JUDGE
```

---

[2] Although Crawford requests leave to file an amended complaint in order to attempt to correct any deficiencies that the court may find in his complaint, the deficiencies in Crawford's complaint are too fundamental to be corrected by amendment.  Because the facts alleged do not support the cause of action asserted, amending the complaint would be futile. *See Hall v. United Ins. Co.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.").